IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(SOUTHERN DIVISION)

| | |
|---|---|
| ABIBAT ABIOLA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| WASHINGTON METROPOLITAN AREA | ) |
| TRANSIT AUTHORITY, | )   Civil Case No. GLS 20-437 |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |
| | ) |

**MEMORANDUM OPINION**

Pending before this Court are the following motions: (1) "Plaintiff's Motion for Partial Summary Judgment as to Liability Only," filed by Plaintiff Abibat Abiola ("Plaintiff") (ECF No. 61) ("Plaintiff's Motion"); and (2) "Defendant's Motion to Dismiss and Cross-Motion for Summary Judgment and Response in Opposition to Plaintiff's Motion for Summary Judgment," filed by Defendant Washington Metropolitan Area Transit Authority ("Defendant") (ECF No. 63) ("Defendant's Motion"). The issues have been fully briefed, *see* ECF Nos. 64, and 66, and this Court finds that no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2021). For the reasons set forth below, Plaintiff's Motion is **DENIED**, and Defendant's Motion is **DENIED IN PART**, **GRANTED IN PART**.

I.  **BACKGROUND**

A.  **Procedural Background**

On December 17, 2019, Plaintiff filed her Complaint in the Circuit Court for Prince George's County, Maryland, alleging negligence in violation of Maryland law. (ECF No. 4).

Plaintiff avers that she suffered severe injuries due to a vehicle collision, which occurred while she was a passenger in a MetroAccess van operated by Defendant's employee. (*Id.*).

On February 20, 2020, the Defendant removed the case to this Court and filed its Answer. (ECF Nos. 1-2). on June 11, 2021, this case was referred to the undersigned for all further proceedings. (ECF No. 17). The parties have consented to the jurisdiction of this Court pursuant to 28 U.S.C. § 636(c). (ECF Nos. 14-15).

Thereafter, the parties filed several motions to extend the Scheduling Order deadlines, which the Court granted. (*See, e.g.*, ECF Nos. 21-24, 32-33). On April 5, 2022, Plaintiff filed a "Notice of Intent to File Motion for Partial Summary Judgment." (ECF No. 41). On May 24, 2022, Defendant filed a response to Plaintiff's notice of intent and asserted that it intended to file a cross-motion for summary judgment. (ECF No. 45). Subsequently, the Court set forth the briefing schedule regarding summary judgment. (*See* ECF Nos. 48, 53, 56, 60). Plaintiff's Motion was filed on January 24, 2023, and Defendant's Motion was filed on February 20, 2023. (ECF Nos. 61, 63). Plaintiff filed a reply brief on February 27, 2023. (ECF No. 64, "Reply").

B. **Factual Background**[1]

The following facts are undisputed.[2] On the morning of December 17, 2016, the Defendant temporarily suspended its Metrobus service due to icy and slippery road conditions. (Deposition of Terry Prevost, 17:2-12, J.A. 0090). The Defendant did not suspend its MetroAccess service, which is the Defendant's shared ride public transportation service for people that cannot use fixed-

---

[1] The parties filed cross-motions for summary judgment. Accordingly, the Court reviews each motion separately and, when considering each individual motion, resolves all factual disputes in the light most favorable to the non-moving party. *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003); *Bacon v. City of Richmond*, 475 F.3d 633, 637-38 (4th Cir. 2007) (same).

[2] The parties submitted a Joint Appendix. (ECF No. 66) ("J.A."). Plaintiff's submissions can be found in this range: 0001-0083, 0140-0199. Defendant's submissions can be found in this range: 0084-0139. The Court will refer to the documents as, e.g., J.A. 00001.

route public transit due to disability. (Declaration of Defendant's Manager of Field Operations, Sterett R. Prevost, IV, ¶¶ 5-6, J.A. 0085-0086). MetroAccess operator Thomas Nmah was tasked with picking up Plaintiff to take her to her dialysis appointment. (Deposition of Thomas Nmah, "Nmah Dep.," 40:4-7, J.A. 0071; *see also* Deposition of Abibat Abiola, "Abiola Dep.," 23:15-17, J.A. 0097). Prior to picking up the Plaintiff, Mr. Nmah performed a routine visual inspection of the van he was driving, which included checking the tires, brakes, lights, signals, air, and heat. (Nmah Dep. 62:11-14, J.A. 0101). Mr. Nmah did not see any issues with the van during the visual inspection. (Nmah Dep. 63:20-21, J.A. 0102). Nine days earlier, on December 8, 2016, Defendant's mechanics had performed a complete inspection of the van. (Deposition of Defendant's Fleet Manager, James W. Hancock, III, "Hancock Dep.," 13:15-14:16, J.A. 0130-0131). The mechanics did not identify any issues with the van. (Hancock Dep. 14:12-17:10, J.A. 0131-0132).

After picking up the Plaintiff, Mr. Nmah drove out of Washington D.C. and drove onto overpass 13C over Route 50 in Bowie, Maryland. (Nmah Dep. 89:4-90:18, J.A. 0110-0111).[3] As Mr. Nmah got on the overpass, he saw flashing police lights. (Nmah Dep. 108:13-17, J.A. 0120). After seeing the police lights, the van Mr. Nmah was driving lost traction on a sheet of ice and began skidding. (Nmah Dep. 92:3-20, J.A. 0112). Although Mr. Nmah attempted to stop the vehicle by lightly pressing on the brakes, the van collided with the highway wall (the "Jersey wall") and another vehicle. (Nmah Dep. 92:9-94:10, J.A. 0112-0114).

The following fact is seemingly in dispute. The Plaintiff contends that the record supports that Mr. Nmah was driving 35-40 miles per hour at the time of the incident. (Reply, p. 7, ¶ 18).

---

[3] In the Plaintiff's Motion, Plaintiff asserts that Mr. Nmah was driving on Route 50 when the incident occurred, which the Defendant disputed. (*See* Plaintiff's Motion, p. 4; *see also* Defendant's Motion, p. 5). Plaintiff's initial contention appears to have been in error. In her Reply, Plaintiff asserts that she does not dispute that Mr. Nmah was driving on overpass 13C *over* Route 50 when the incident occurred. (Reply, p. 7, ¶ 15). Accordingly, this fact is undisputed.

Plaintiff also claims that the MetroAccess driver has so testified. (Nmah Dep. 89:14-19, J.A. 0110). The Defendant argues that the van's dashcam footage at the time of the incident and Mr. Nmah's testimony show that Mr. Nmah was traveling 5-10 miles per hour. (Exhibit 6, J.A. 0123; *see also* Nmah Dep. 92:3-5, J.A. 0112).

Next, there is a dispute about whether, before the MetroAccess van lost traction, Mr. Nmah saw the other vehicles on the highway that had crashed due to the road conditions. Although the parties agree that Mr. Nmah saw police lights prior to the van skidding, the Plaintiff contends that Mr. Nmah saw the crashed vehicles prior to losing control of his vehicle. (*See* Reply, p. 7, ¶ 15; *see also* Nmah Dep. 106:6-107:3, J.A. 0118-0119). According to the Defendant, however, Mr. Nmah saw the other crashed vehicles prior to the van crashing, but not until **after** the van began skidding on the ice. (Defendant's Motion, p. 13; *see also* Nmah Dep. 105:3-9, J.A. 0117).

Finally, Plaintiff claims that there is a dispute about whether the vehicle collision caused Plaintiff's head to make contact with the van's left side rear window. Plaintiff asserts that her head hit the van's window as a result of the vehicle collision. (Plaintiff's Motion, p. 4). However, the Plaintiff does not cite to any evidence in the record to support this contention. The Defendant asserts that the van's dashcam footage shows that Plaintiff did not hit her head at the time of the incident. (Exhibit 6, J.A. 0123).[4]

## II.   STANDARD OF REVIEW

### A. Motion to Dismiss for Lack of Subject Matter Jurisdiction

Pursuant to Federal Rules of Civil Procedure ("Fed. R. Civ. P.") 12(b)(1), a party may move to dismiss a complaint for lack of subject matter jurisdiction. A Rule 12(b)(1) motion may

---

[4] The parties raise this seeming dispute in their pleadings; however, they never argue its relevance to the summary judgment issue. Assuming that, at trial, there is actually a factual dispute on this issue, the jury can resolve it by deciding the proper weight to give the facts after receiving appropriate jury instructions.

allege that sovereign immunity serves as a jurisdictional bar against the claim. *Smith v. Wash. Metro. Area. Transit Auth.*, 290 F.3d 201, 205 (4th Cir. 2002). When a defendant challenges subject matter jurisdiction, the plaintiff bears the burden of establishing that subject matter jurisdiction exists. *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999).

A Rule 12(b)(1) challenge to subject matter jurisdiction may proceed "in one of two ways": (1) by mounting either a facial challenge, asserting that the allegations pleaded in the complaint are insufficient to establish subject matter jurisdiction; or (2) a factual challenge, asserting "'that the jurisdictional allegations of the complaint [are] not true.'" *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (alteration in original) (citation omitted). In a facial challenge, "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns*, 585 F.3d at 192. In a factual challenge, however, a "district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction." *Id.*

**B. Motion For Summary Judgment**

Motions for summary judgment shall be granted only if there are no genuine issues as to any material fact, such that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of showing that there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(a); *Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987) (internal citation omitted). The burden can be satisfied through the submission of, e.g., pleadings, depositions, answers to interrogatories, admissions, and affidavits. *Celotex Corp.,* 477 U.S. at 323; *Barwick v. Celotex Corp.*, 736 F.2d 946, 958 (4th Cir. 1984). To defeat motions for summary judgment, on the other hand, the nonmoving party cannot

simply cast "metaphysical doubt" on the material facts, but rather must provide specific facts demonstrating a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citing Fed. R. Civ. P. 56(e)).

The Court must construe the facts and documentary materials submitted by the parties, including the credibility and weight of particular evidence, in the light most favorable to the party opposing the motions. *Masson v. N.Y. Magazine, Inc.*, 501 U.S. 496, 520 (1991) (citing *Anderson*, 477 U.S. at 255). When a court is faced with cross-motions for summary judgment, the court resolves each motion independently and resolves each individual motion by viewing the facts in the light most favorable to the party opposing the motion. *Rossignol*, 316 F.3d at 523. A mere scintilla of evidence is insufficient to create an issue of material fact. *See Barwick*, 736 F.2d at 958–59 (citing *Seago v. North Carolina Theatres, Inc.*, 42 F.R.D. 627, 632 (E.D.N.C 1966)). Summary judgment is inappropriate if any material factual issue "may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

### III. ANALYSIS

The Plaintiff argues that she is entitled to summary judgment on the following grounds: (1) the Defendant was negligent when it decided to not suspend its MetroAccess service due to inclement weather; (2) the Defendant was negligent in its failure to properly maintain and repair the van involved in the collision; and (3) Defendant's MetroAccess operator, Mr. Nmah, caused the collision by driving negligently.

In response, the Defendant argues: (1) it enjoys sovereign immunity from challenges to its decision to continue providing MetroAccess service during inclement weather; (2) it is entitled to summary judgment on Plaintiff's negligent maintenance claim because Plaintiff failed to produce any evidence that the Defendant failed to properly maintain its van and its records show that there

were no issues with the van on the day of the collision; and (3) it is entitled to summary judgment on Plaintiff's claim that Mr. Nmah negligently operated the MetroAccess van because the evidence demonstrates that Mr. Nmah drove reasonably under the circumstances.

> A. <u>WMATA's Decision to Continue MetroAccess Service-Sovereign Immunity</u>

Plaintiff argues that she is entitled to summary judgment with respect to her claim that the Defendant negligently continued to provide its MetroAccess service because the Defendant knew that the dangerous weather conditions made it unreasonable to continue operations. (Plaintiff's Motion, pp. 1, 3; Reply, pp. 1, 5). The Defendant asserts that its decision to continue or suspend MetroAccess service is a "discretionary" act for which it is entitled to sovereign immunity. (Defendant's Motion, p. 9). Plaintiff argues, however, that sovereign immunity does not apply for two reasons: (1) the decision to continue or suspend service is guided by WMATA's policy on driving in inclement weather and is therefore not discretionary; and (2) even if the decision is discretionary, it is not grounded in public policy, so sovereign immunity does not apply. (Plaintiff's Motion, p. 11; Reply, p. 17).

As a preliminary matter, the Court has again reviewed the Plaintiff's Complaint and finds that the Plaintiff did not assert any claim related to Defendant's decision to continue to provide MetroAccess service during inclement weather. Plaintiff's allegations are entirely limited to the Defendant's operation of its MetroAccess van *while* the van was on the road. (*See* Complaint, ¶¶ 1-11) (emphasis supplied). Plaintiff's Complaint violates the minimum pleading standard set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Despite this fact, Plaintiff illogically argues that there is no genuine issue of material fact, and that she is entitled to judgment as a matter of law for facts that she never pleaded. Under these

circumstances, the Court will not grant summary judgment in Plaintiff's favor. Accordingly, Plaintiff's Motion is denied as it relates to this claim.

Assuming *arguendo* that there is some construct under which Plaintiff did adequately plead this claim, Plaintiff's Motion is still denied, and Defendant's Motion is granted for the reasons articulated below.

Maryland, Virginia, and the District of Columbia created WMATA via an interstate compact ("the Compact"), so that WMATA would provide transportation in the Washington D.C. metro area. *Delon Hampton & Assocs. v. Wash. Metro. Area Transit Auth.*, 943 F.2d 355, 357-59 (4th Cir. 1991). The Compact between the three governments established WMATA as an interstate agency and instrumentality of each signatory. *Id.* at 359. Thus, WMATA "enjoys the same rights and privileges as a state, including sovereign immunity." *Bailbey v. Wash. Metro. Area Transit Auth.*, Civ No. CBD 15-1731, 2016 WL 1391820, at *5 (D. Md. Apr. 8, 2016); *see also Smith v. Wash. Metro. Area Transit Auth.*, 290 F.3d 201, 206 (4th Cir. 2002).

WMATA enjoys a unique type of sovereign immunity with respect to certain claims. *Pierce v. Wash. Metro. Area Transit Auth.*, Civ. No. DKC 09-1917, 2010 WL 4485826, at *3 (D. Md. Nov. 9, 2010). However, its sovereign immunity is not absolute. The extent of WMATA's sovereign immunity is outlined in Section 80 of the Compact, which states, in pertinent part:

> The Authority shall be liable for its contracts and for its torts and those of its directors, officers, employees, and agents committed in the conduct of any proprietary function, in accordance with the applicable signatory (including rules of conflict of laws), but shall not be liable for any torts occurring in the performance of a governmental function.

Md. Code Ann., Transp. § 10–204(80) (2010). Put another way, WMATA retains its immunity for torts arising out of its exercise of governmental functions but waives its sovereign immunity

for torts it commits when exercising its proprietary, i.e., non-governmental functions. *Smith, supra*, at 206; *Proctor v. Wash. Metro. Area Transit Auth.*, 990 A.2d 1048, 1058-59 (2010).

To determine what constitutes a "governmental act," courts engage in a two-part analysis. In part one of the analysis, a court must determine if the challenged conduct was a "quintessential governmental function," such as conduct involving law enforcement. *Smith*, *supra*, 290 F.3d at 207; *see also Doe v. Wash. Metro. Area Transit Auth.*, 453 F. Supp. 3d 354, 363-64 (D.D.C. 2020). If so, WMATA's sovereign immunity bars the claim. *Smith*, *supra*, 290 F.3d at 207. However, if an act or the conduct is not quintessentially governmental, i.e., it is proprietary (non-governmental), a court must proceed to the second step in the analysis and determine whether WMATA was engaged in a discretionary act or a ministerial act. *Id*. Courts have found that a "discretionary act" is analogous to an agency's governmental functions for which it retains immunity. *Id.* Conversely, a "ministerial act" falls within an agency's proprietary functions for which it waives immunity. *Id.*, at 208. Courts have explained that a discretionary act involves "judgment, planning, or policy decisions," whereas a non-discretionary, i.e. a ministerial act, involves the "enforcement or administration of a mandatory duty at the operational level." *Pierce*, *supra*, at *4 (quoting *KiSKA Constr. Corp. v. Wash. Metro. Area Transit Auth.*, 321 F.3d 1151, 1159 (D.C. Cir. 2003).

To distinguish a discretionary act from a proprietary one, a court asks two questions. First, whether a "statute, regulation, or policy **specifically** prescribes a course of action for an employee to follow." *Pierce*, *supra*, at *4 (emphasis added) (quoting *KiSKA Constr. Corp.*, 321 F.3d at 1159). If the course of action is prescribed, then the challenged conduct is not discretionary and WMATA is not immune. *Id.* Second, a court examines if the exercise of discretion is "grounded in social, economic, or political goals. *Pierce*, at *4. If WMATA's exercise of discretion is

9

"grounded in social, economic, or political goals, then sovereign immunity applies." *Tinsley v. Wash. Metro. Area Transit Auth.*, 55 A.3d 663, 674 (Md. 2012). Such activity falls within the "discretionary function exception." *Smith*, 290 F.3d at 207. Put another way, "day-to-day operational decisions of government are entitled to immunity . . . so long as the choices are susceptible to policy analysis." *Id.* at 208 (citation omitted).

In this case, the decision to continue or suspend MetroAccess service is not a "quintessentially governmental operation," such as police activity or firefighting. So, the Court must assess if the Defendant engages in "discretionary" or "ministerial" conduct when it decides whether to continue providing MetroAccess services. Here, Plaintiff contends that the decision to continue or suspend services is not discretionary because Defendant's "Customer Guide to MetroAccess," ("Customer Guide") provides the controlling policy Defendant must follow when making such decisions. (Plaintiff's Motion, p. 11).

Defendant's Customer Guide contains the following language when outlining how Defendant's operations may be affected by inclement weather:

> MetroAccess *may* make service modifications during severe weather, hazardous conditions, or other emergency conditions. Examples of severe weather include icy roads, snow accumulation, high winds and tornadoes. During such conditions, door-to-door service may revert to curb-to-curb service, and *if warranted*, service may be curtailed to return trips only or suspended altogether.

(Customer Guide, J.A. 0023) (emphasis added). Upon review of the Customer Guide, the Court finds Plaintiff's argument unavailing. By its plain language, the Customer Guide does not specify a "mandatory duty" or prescribe a particular course of action that Defendant must take when there are severe or hazardous weather conditions. Instead, the Customer Guide advises Defendant's customers that Defendant "may make service modifications" and service may be curtailed "if warranted." (*Id.*). It is apparent from the plain language of the Customer Guide that the decision

to continue or suspend service is discretionary. Accordingly, the Customer Guide does not operate as "a statute, regulation, or policy that specifically prescribes a course of action." *See Pierce*, *supra*, at *4.

Furthermore, as the Defendant correctly asserts, various courts have already held that operation schedules are discretionary, and decisions related thereto are entitled to sovereign immunity. *See, e.g.*, *United States v. Varig Airlines*, 467 U.S. 797, 808 (1984) (finding that acts such as "establishing plans, specifications or schedules of operations" are discretionary); *Sanders v. Wash. Metro. Area Transit Auth.*, 819 F.2d 1151, 1154 (D.C. Cir. 1987) (same); *Walen v. United States*, 246 F. Supp. 3d 449, 461 (D.D.C. 2017) (same); *Beatty v. Wash. Metro. Area Transit Auth.*, 860 F.2d 1117, 1127 (D.C. Cir. 1987) ("The cases teach that WMATA will not be liable for determinations made in establishing "plans, specifications *or schedules of operations*") (emphasis added).

In sum, Plaintiff has failed to: (1) identify any "statute, regulation, or policy" that specifically prescribes a course of action related to Defendant's schedule of operations; and (2) counter Defendant's argument that Defendant's decision to continue to provide its MetroAccess service is a discretionary decision rooted in "social, economic, or political" goals. Accordingly, Plaintiff's Motion is denied, and Defendant's Motion is granted with respect to this claim.

Plaintiff's claim that the Defendant negligently failed to suspend its MetroAccess service is dismissed without prejudice. *See Southern Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands*, LLC, 713 F.3d 175, 185 (4th Cir. 2013) (dismissal for defect in subject matter jurisdiction is without prejudice).

    B.  <u>Remaining Negligence Claims</u>

The parties both move for summary judgment with respect to Plaintiff's claims that: (1) the Defendant negligently failed to maintain the MetroAccess van that crashed on December 17, 2016; and (2) Mr. Nmah's negligent operation of the van caused the crash. On the negligent maintenance claim, Plaintiff asserts that Defendant cannot produce any records that prove that the van was in working condition on December 17, 2016. The Defendant, however, argues that the evidence demonstrates that the van was inspected both the week before and the morning of the collision and that neither inspection revealed any problems with the van. On the negligent operation claim, the Plaintiff contends that Mr. Nmah: (1) drove at an unreasonable speed given the weather conditions; and (2) Mr. Nmah negligently failed to stop the van once he saw that other vehicles had crashed due to the icy road conditions on the highway. (Plaintiff's Motion, pp. 1, 16, 21). The Defendant asserts that the evidence demonstrates that Mr. Nmah drove at a reduced speed to account for the icy road conditions and that Mr. Nmah did not see the other crashed vehicles until the van had begun skidding due to the ice. (Defendant's Motion, pp. 12-13).

As a preliminary matter, the Court has again reviewed the Plaintiff's Complaint and finds that the Plaintiff did not assert any claim related to Defendant's maintenance of its MetroAccess van. Plaintiff's allegations are entirely limited to the Defendant's operation of its MetroAccess van *while* the van was on the road. (*See* Complaint, ¶¶ 1-11) (emphasis supplied). Plaintiff's Complaint violates the minimum pleading standard set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Despite this fact, Plaintiff illogically argues that there is no genuine issue of material fact, and that she is entitled to judgment as a matter of law for facts that she never pleaded. Under these circumstances, the Court will not grant summary judgment in Plaintiff's favor. Accordingly, Plaintiff's Motion is denied as it relates to this claim.

Assuming *arguendo* that there is some construct under which Plaintiff did adequately plead this claim, Plaintiff's Motion is still denied, and Defendant's Motion is granted for the reasons articulated below.

In short, Plaintiff does not present *any* evidence that Defendant failed to properly maintain its MetroAccess van. The Defendant, however, presents evidence that: (1) the van is inspected on a monthly basis; (2) Defendant's mechanics did not identify any issues with the van during an inspection they conducted on December 8, 2016; and (3) Mr. Nmah performed a visual inspection of the van prior to picking up the Plaintiff on December 17, 2016, and did not see any problems with the van. (Hancock Dep. 14:12-17:10, J.A. 0131-0132; Nmah Dep. 62:9-18, J.A. 0101). Instead of presenting evidence that the Defendant does not properly maintain its vehicle, the Plaintiff merely disagrees with Mr. Nmah's ability to inspect the van because he is not a mechanic. (*See* Reply, p. 8). However, Plaintiff does not offer any evidence to establish the fact that because Mr. Nmah is not a mechanic, he cannot perform a visual inspection of a vehicle.

Thus, when viewing the evidence in the light most favorable to the Defendant, a reasonable jury could not find that the Defendant failed to properly maintain its vehicle, so Plaintiff's Motion is denied. Relatedly, even when viewing the evidence in the light most favorable to the Plaintiff, the Court finds that a reasonable jury could not find that the Defendant failed to properly maintain its vehicle. Accordingly, Defendant's Motion with respect to negligent maintenance is granted.

With the negligent maintenance claim resolved, the Court will now analyze the negligent operation claim and the law related thereto.

1. Negligence: The Law

To establish a cause of action for negligence in Maryland, a plaintiff must prove four elements: (1) defendant was under a duty to protect the plaintiff from injury; (2) the defendant

breached that duty; (3) the plaintiff suffered actual loss or injury; and (4) the loss or injury proximately resulted from the defendant's breach of the duty. *See Todd v. Mass Transit Admin.*, 373 Md. 149, 155, 816 A.2d 930 (Md. 2003) (internal quotations and citations omitted). Negligence is a relative concept and must be decided on the facts of each particular case; ordinarily, it is a question of fact to be determined by the jury. *See Fowler v. Smith*, 240 Md. 240, 246 A.2d 549 (1965).[5]

Common carriers, such as WMATA, owe an elevated duty of care to passengers. Specifically, WMATA owes passengers "the highest degree of care to provide safe means and methods of transportation for them." *Todd*, *supra*, 373 Md. at 156. A common carrier, however, is not an insurer of the safety of its passengers; rather, it is bound to deliver passengers to their destination as expeditiously as possible, consistent with safety. *Mass Transit Admin. v. Miller*, 271 Md. 256, 259, 315 A.2d 772 (Md. 1974).[6]

2. Negligent Operation Claim

Plaintiff argues that she is entitled to summary judgment with respect to her negligent operation claim because the evidence demonstrates that Mr. Nmah drove at an unreasonable speed

---

[5] In *Fowler,* the Court of Appeals of Maryland opined that "meager evidence of negligence is sufficient to carry the case to the jury. The rule has been stated as requiring submission if there be any evidence, however slight, *legally sufficient* as tending to prove negligence, and the weight and value of such evidence will be left to the jury." *Fowler*, 240 Md. at 246 (emphasis in original). Only when reasonable minds cannot differ when faced with the undisputed facts and all favorable inferences drawn in favor of the party trying to prove negligence does the question of negligence become one of law. *Id.* at 247.

[6] In addition to her negligence claims, the Plaintiff appears to contend that driving on an icy road is an "abnormally dangerous activity" that brings this case under the umbrella of strict liability. (Plaintiff's Motion, p. 14). The Court disagrees. In assessing if an activity is "abnormally dangerous," the Fourth Circuit follows the approach outlined in the Restatement (Second) of Torts § 520 (1977). In general, abnormally dangerous activities are those activities that are so dangerous that their danger cannot be mitigated through the exercise of reasonable care, e.g., disposal of nuclear or chemical waste, transportation of chemical materials, explosive blasting. Driving on an icy road does not meet that standard. *See* Restatement (Second) of Torts § 520, cmts. (c)-(d) (1977) (activities such as explosive blasting and management of atomic energy are examples of "abnormally dangerous activities").

and failed to stop driving after seeing that other vehicles had crashed due to the icy road conditions. (Plaintiff's Motion, p. 13-20).

### i. Vehicle Speed

To advance her argument that Mr. Nmah was driving at an unreasonably fast speed at the time of the incident, Plaintiff points to Mr. Nmah's testimony where he testifies that he was driving 35-40 miles per hour. (Nmah Dep. 89:14-19, J.A. 0110). The Defendant counters that: (1) the video evidence shows that Mr. Nmah was driving at 9 miles per hour at the time of the incident; and (2) Mr. Nmah testified that at the time of the incident, he was driving between 5 to 10 miles per hour. (Exhibit 6, J.A. 0123; Nmah Dep. 92:3-5, J.A. 0112).

According to Plaintiff, Mr. Nmah's driving speed was inappropriate given the weather conditions and Mr. Nmah should have driven at a reduced speed to account for the icy road. Defendant argues that Mr. Nmah did drive at a reduced speed and that that no reasonable jury could conclude that Mr. Nmah was driving at 35-40 miles per hour given the video footage and Mr. Nmah's testimony. The Court agrees with the Defendant. On this issue, the Court finds instructive *Scott v. Harris*, 550 U.S. 372 (2007). In *Scott*, the Supreme Court held that "when opposing parties tell two different stories," a court, when ruling on a motion for summary judgment should not adopt the version of facts that is blatantly contradicted by the record. *Scott*, 550 U.S. at 380. Thereafter the Supreme Court found that the Eleventh Circuit erred when it adopted a version of events that was contradicted by video evidence. *Id.* at 381 ("The Court of Appeals should not have relied on such visible fiction; it should have viewed the facts in the light depicted by the video tape"). The same is true in this case. The van's dashcam footage shows that when the van began to lose control, Mr. Nmah was driving at a reduced speed, no faster than 9 miles per hour. (Exhibit 6, J.A. 0123). As such, Plaintiff's assertion to the contrary is blatantly contradicted by the record.

Moreover, Plaintiff mischaracterizes Mr. Nmah's testimony when she argues that Mr. Nmah was traveling 35 to 40 miles per hour at the time of the incident. Mr. Nmah testified that "on Route 50 I think the speed limit is 60. So, if the speed limit is 60 and there is snow on the ground, I will be driving, maybe, like 35, 40." However, it is an undisputed fact that the incident did not occur on Route 50. (Reply, p. 7, ¶ 15). The incident took place on "overpass 13C over Route 50." (*Id.*). Furthermore, contrary to Plaintiff's mischaracterization of the evidence, Mr. Nmah specifically testified that he was no longer driving 35 to 40 miles per hour the time of the incident when he said "from [Route] 50, I got on the ramp. It was around the icy condition where existing, where the vehicle slide and it hit the Jersey wall, and I was going, like, 5, 10." (Nmah Dep. 91:18-21, J.A. 0111). Thus, Mr. Nmah's testimony is consistent with the video evidence.

In sum, when viewing the facts in the light most favorable to the Defendant, Plaintiff fails to establish that Mr. Nmah drove at an unreasonable speed and failed to reduce his speed to account for the icy roads, so Plaintiff's Motion is denied on this issue. Furthermore, a reasonable jury, even when construing the facts in the light most favorable to Plaintiff, could not conclude that Mr. Nmah failed to drive at a reduced rate, between 5 and 10 miles per hour, to account for the icy road conditions. Accordingly, Defendant's Motion is granted on this issue.

### ii. Failure to Stop

Plaintiff asserts that prior to the van skidding on the ice, Mr. Nmah had the opportunity to avoid crashing because he saw that multiple other vehicles had crashed due to the ice, and his failure to stop was negligent. (Plaintiff's Motion, pp. 1, 13, 21; Reply, p. 7). The Defendant concedes that Mr. Nmah saw the other crashed vehicles but contends that he did not see them until **after** the van began skidding, and, as a result, "there is no evidence that Mr. Nmah knew or should have known that the incident would occur." (Defendant's Motion, p. 13).

16

Construing the facts related to Mr. Nmah's testimony, the Court finds that a genuine dispute of material fact exists as to whether and when Mr. Nmah saw the other crashed vehicles. This is because Mr. Nmah testifies as follows:

> Q: Good. At what point did you see that vehicle before the collision occurred?
> A: At what point I saw it? Mine, you know, the vehicle was sliding. The other vehicle had already sled and it was on the wall, and as I was coming, my vehicle collided with it.
> Q: So you didn't see the vehicle until you started sliding or did you see it before?
> A: I saw the vehicle. There were a lot of vehicle on the road. I was sliding.

(Nmah Dep. 104:17-105:6, J.A. 0116-0117). However, later in the deposition, Mr. Nmah testifies as follows:

> Q: And before your collision occurred, you saw about a hundred vehicles on the ramp?
> A: I saw about a hundred – not before the – I saw about one hundred vehicles on the ramp, hitting and sliding and hitting.

(Nmah Dep. 106: 11-15, J.A. 0118). Neither of these passages, nor any other evidence in the record, conclusively resolves whether Mr. Nmah saw the other vehicles before or after the MetroAccess van started skidding on the ice. Accordingly, there is a genuine factual dispute, and neither party is entitled to summary judgment on this issue. A reasonable jury, when assessing the facts in the light most favorable to the Defendant, could conclude that Mr. Nmah exercised due care under the circumstances. Similarly, a reasonable jury, when construing the evidence in the light most favorable to Plaintiff, could find that Mr. Nmah failed to stop. In sum, both Plaintiff's Motion and Defendant's Motion are denied with respect to the failure to stop issue.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff's Motion is **DENIED**. Defendant's Motion is **DENIED IN PART, GRANTED IN PART**. First, Defendant's Motion with respect to Plaintiff's claim that Mr. Nmah negligently failed to stop the MetroAccess van prior to the collision is **DENIED**.

Defendant's Motion is **GRANTED** as to the following: (1) Plaintiff's claim that Defendant's MetroAccess operator, Mr. Nmah negligently operated the MetroAccess van by driving at an unreasonable speed is **DISMISSED WITH PREJUDICE**; (2) Plaintiff's claim that Defendant negligently maintained its MetroAccess van is **DISMISSED WITH PREJUDICE**; and (3) Plaintiff's claim that Defendant negligently failed to suspend service is **DISMISSED WITHOUT PREJUDICE**.

  A separate Order will follow.

Dated:  March 24, 2023            /s/
                      The Honorable Gina L. Simms
                      United States Magistrate Judge